UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KHALIL JENNINGS,

Plaintiff,

-against-

Correction Sgt. MELVEN DURHAM,
Correction Officer BRAD DELANEY,
Correction Officer MICHAEL OSBORN,
Correction Officer NICHOLAS FLEURY,
Correction Officer CHRISTOPHER CHASE,
Correction Officer JARED MILLER, and
Counselor J. CLARK,

Defendants.

No. 9:24-CV-611 (DNH/DJS)

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff Khalil Jennings, by and through his attorneys Kaufman Lieb Lebowitz & Frick, alleges as follows:

## INTRODUCTION

1. In June 2023, just days before he was set to be released from incarceration at Upstate Correctional Facility ("Upstate"), Khalil Jennings was violently beaten by Correction Officers ("COs") after he refused to enter a cell where he would have been forced to fight another inmate.

2. Instead of heeding Mr. Jennings's very clear desire not to fight and protecting his safety by simply moving him to another cell, the officers threw Mr. Jennings into the dangerous cell, violently beat him until he couldn't move, hogtied him with bed sheets, and threw him under the bed.

3. After a fellow inmate alerted other staff to Mr. Jennings's dire medical condition, Mr. Jennings was taken to the hospital. He spent six days hospitalized, recovering from the numerous injuries caused by the officers' sadism, including a broken nose, broken ribs, a fractured spine, a leak of fluid and blood around his lungs, nerve damage in his hand, and bruising and lacerations on his face.

4. To this day, Mr. Jennings is still recovering from the severe physical and emotional trauma the beating caused him.

**PARTIES**

5. Plaintiff Khalil Jennings is a citizen of the United States. At all relevant times, he was a person incarcerated at Upstate in Malone, New York.

6. At all relevant times, Sergeant Melven Durham was a sergeant at Upstate, acting in the capacity of agent, servant, and employee of the Department Of Corrections and Community Supervision ("DOCCS"), within the scope of his employment as such, and acting under color of state law. Sgt. Durham is sued in his individual capacity.

7. At all relevant times, Correction Officer ("CO") Brad Delaney was a correction officer at Upstate, acting in the capacity of agent, servant, and employee of DOCCS, within the scope of his employment as such, and under color of state law. CO Delaney is sued in his individual capacity.

8. At all relevant times, CO Michael Osborn was a correction officer at Upstate, acting in the capacity of agent, servant, and employee of DOCCS, within the scope of his employment as such, and under color of state law. CO Osborn is sued in his individual capacity.

9. At all relevant times, CO Nicholas Fleury was a correction officer at Upstate, acting in the capacity of agent, servant, and employee of DOCCS, within the

scope of his employment as such, and under color of state law. CO Fleury is sued in his individual capacity.

10. At all relevant times, CO Christopher Chase was a correction officer at Upstate, acting in the capacity of agent, servant, and employee of DOCCS, within the scope of his employment as such, and under color of state law. CO Chase is sued in his individual capacity.

11. At all relevant times, CO Jared A. Miller was a correction officer at Upstate, acting in the capacity of agent, servant, and employee of DOCCS, within the scope of his employment as such, and under color of state law. CO Miller is sued in his individual capacity.

12. At all relevant times, Counselor "Jane" Clark, whose first name Mr. Jennings has been unable to ascertain notwithstanding reasonable efforts to do so and who is sued herein by the fictitious designation "Jane Clark," was a Counselor at Upstate, acting in the capacity of agent, servant, and employee of DOCCS, within the scope of her employment as such, and under color of state law. Counselor Clark is sued in her individual capacity.

## JURISDICTION AND VENUE

13. This action arises under the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983. This Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331 and 1343(a)(4).

14. The acts complained of occurred in the Northern District of New York, and venue in this Court is proper under 28 U.S.C. § 1391(b).

## JURY DEMAND

15. Mr. Jennings demands a trial by jury in this action.

## FACTUAL ALLEGATIONS

16. On May 31, 2023, at approximately 3:40 p.m., Mr. Jennings was informed that he was being transferred from one cell to another at Upstate. He was being moved from 10-A1-18 cell to RRU area cell 10-c1-17.

17. When Mr. Jennings arrived at the new cell, he saw that there was someone else in it.

18. When he saw who that individual was, Mr. Jennings knew that he would not be safe in that cell. He knew that the other inmate would likely react violently if Mr. Jennings were placed in the cell with him.

19. Mr. Jennings told Defendant Durham that he feared for his safety in that cell.

20. Defendant Durham informed Mr. Jennings that there was nothing that he could do about the cell assignment unless Mr. Jennings and the other inmate fought to determine who would remain in the cell.

21. Mr. Jennings did not want to fight anyone and was terrified. Because Mr. Jennings was afraid for his safety in this double cell, he refused to enter.

22. Mr. Jennings told Defendant Durham that he wanted to commit suicide, hoping that this statement would cause him to be placed on suicide watch so that he would not have to fight another inmate.

23. Mr. Jennings was sent to the infirmary on suicide watch.

24. The next day, June 1, 2023, at approximately 10:34 a.m., while on suicide watch, Mr. Jennings informed Defendant Clark, a counselor, that officers were trying to make him fight another inmate. He explicitly told her that he did not want to fight.

25. Defendant Clark told Mr. Jennings that there was nothing she could do and, in sum and substance, that he should just fight because that is the way things work at Upstate. She told him to "get over it" and that he would not get in trouble if he fought.

26. Mr. Jennings was released from suicide watch that day.

27. Upon his release, he was shackled and taken back to the same cell, RRU area cell 10-C1-17.

28. Mr. Jennings again refused to enter the cell. The COs who were transporting him from the infirmary said that they understood his reluctance but that there was nothing they could do.

29. Mr. Jennings was then taken back to the prison's intake area, where he waited for about twenty minutes until Defendant Durham came and asked him what was going on.

30. Mr. Jennings told Defendant Durham that he was an "old man" who did not want to fight. He said that he did not want trouble and that he was trying to put his past life behind him. Mr. Jennings asked Defendant Durham to "look into his heart" and put Mr. Jennings in another cell, where he would be safe. Defendant Durham said that he would see what he could do.

31. Mr. Jennings waited in the intake room for a few more minutes. During this time, Defendant Osborn entered the room and asked Mr. Jennings which cell he was assigned to.

32. Mr. Jennings replied that he didn't have an assigned cell and was waiting for Defendant Durham to come back.

33. Upon information and belief, Defendant Fleury then entered the intake area, and, among other things, asked Mr. Jennings the same questions and called Mr. Jennings a "dickhead."

34. Despite Mr. Jennings's pleading, only minutes later, Defendant Durham again ordered that Mr. Jennings be placed in the same cell, RRU area cell 10-C1-17. Defendants Osborn and Fleury dragged Mr. Jennings to the same cell he had twice refused to enter due to his fear of having to fight.

35. Defendants told Mr. Jennings that he was going in whether he liked it or not. When Mr. Jennings told them they weren't respecting his safety and rights, they told him that they didn't believe in that.

36. Then, upon Defendant Durham's orders, and with the assistance of Defendants Delaney, Miller, and Chase, Defendants Osborn and Fleury used physical force to propel Mr. Jennings, who was handcuffed, into the cell.

37. Defendants Osborn and Fleury dragged Mr. Jennings, who remained handcuffed, inside the cell. Defendants Delaney, Miller, and Chase then entered the cell after them.

38. Mr. Jennings was forced into the cell face first and thrown down, hitting the metal side of a bedframe as he fell to the floor.

39. Mr. Jennings was screaming “please stop” and “help.” Defendants told him to “stop resisting,” and Mr. Jennings replied that he “wasn’t resisting” and that since he was shackled, he couldn’t do anything to them.

40. The five Defendant COs proceeded to beat and punch Mr. Jennings about his face and body, including his ribs, until he could no longer move.

41. Defendants next turned Mr. Jennings onto his stomach.

42. They unshackled Mr. Jennings so that they could use bedsheets to tie him up. They continued to beat him while doing so.

43. Defendant Miller proceeded to wrap a bed sheet around Mr. Jennings’s legs and then another bed sheet around his wrists so that Mr. Jennings was hogtied.

44. The Defendant COs eventually forced Mr. Jennings under the bottom bunk of the bed by kicking him with their feet.

45. Defendants left Mr. Jennings under the bottom bunk and exited the cell. Mr. Jennings’s cellmate, who had been directed to remain in the back half of the cell (called the “rec pen”) while the assault was ongoing, was permitted to reenter the part of the cell where Mr. Jennings had been left.

46. The cellmate tried to get Mr. Jennings water, but Mr. Jennings could not drink.

47. Mr. Jennings told the cellmate that he couldn’t breathe.

48. The cellmate untied Mr. Jennings and started calling out for medical help.

49. Eventually, an unidentified CO approached, opened the cell, told Mr. Jennings to drag himself to the cell’s entrance, handcuffed Mr. Jennings, and put him onto a stretcher.

50. Mr. Jennings was in incredible pain.

51. As Mr. Jennings was being transported, a nurse who was in the hallway on her way to his cell looked at him and said, “He’s not dead yet?”

52. Mr. Jennings was taken to the prison infirmary, where he reported difficulty breathing in addition to his obvious physical injuries.

53. Mr. Jennings was taken to Alice Hyde Medical Center (“Alice Hyde”) for further treatment.

54. At Alice Hyde, Mr. Jennings was found to have abrasions and contusions on his head; swelling of his jaw, the area behind his ear, and his cheek; decreased breath sounds; and rib, chest, and abdominal tenderness.

55. Mr. Jennings was then transported to Albany Medical Center (“Albany”).

56. Mr. Jennings informed the staff at Albany that he had been assaulted earlier that day.

57. At Albany, Mr. Jennings was diagnosed with acute fractures of his left ninth rib, his right ninth to eleventh ribs, and his right L2 transverse process; a hemothorax bilaterally; a fracture of his nasal bone; radial nerve palsy; and facial contusions, including bruising of his left superior orbit.

58. Mr. Jennings stayed at Albany for six days.

59. The blows the COs Fleury, Osborn, Delaney, Miller, and Chase inflicted on Mr. Jennings broke his nose, broke multiple ribs, fractured his spine, caused fluid and blood to leak in and around his lungs, caused nerve damage in his hand, and caused bruising and lacerations on his face.

60. The incident also caused Mr. Jennings to suffer severe emotional damages including terror, humiliation, and distress.

61. Mr. Jennings continues to experience physical and emotional trauma as a result of Defendants' actions.

62. Since the incident, Mr. Jennings has had difficulty sleeping. He wakes up throughout the night covered in sweat and suffers from nightmares. He dreams that he cannot breathe, a sensation he experienced during and after the beating.

63. Mr. Jennings also has difficulty eating. He has trouble swallowing his food and is vomiting more often than he ever has before. This has led to a severe drop in his weight and energy such that he has trouble functioning, preventing him from leaving his house.

64. Mr. Jennings also suffers from frequent headaches and has experienced chest pain as a result of the injuries he sustained during the beating.

65. Mr. Jennings also suffers from a loss of enjoyment of life—he no longer likes to do things he once enjoyed and has difficulty being around people. He has become solitary in a way he never was before.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 – Eighth Amendment – Excessive Force
### Against Defendants Durham, Osborn, Delaney, Fleury, Chase, and Miller

66. Mr. Jennings realleges the preceding paragraphs as if set forth here.

67. Defendants used or caused to be used objectively unreasonable force against Mr. Jennings and/or failed to intervene to prevent the use of such force despite having a reasonable opportunity to do so.

68. The use of force against Mr. Jennings was done maliciously and sadistically and constituted cruel and unusual punishment.

69. The Defendants acted willfully, wantonly, knowingly, and with the specific intent to deprive Mr. Jennings of his rights under the Eighth Amendment of the United States Constitution.

70. As a result of these acts, Mr. Jennings suffered the injuries and damages set forth above.

71. Defendants are liable for Mr. Jennings's injuries.

72. At all relevant times, these Defendants were acting under color of state law and within the scope of their employment as DOCCS employees.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 – Eighth Amendment – Deliberate Indifference**
**Against Defendant Clark**

73. Mr. Jennings realleges the preceding paragraphs as if set forth herein.

74. Defendant Clark knew of the risk to Mr. Jennings's safety and failed to intervene to prevent him from being harmed despite having a reasonable opportunity to do so.

75. As a result of Defendant Clark's deliberate indifference to the substantial risk that he would be seriously harmed, Mr. Jennings was in fact seriously harmed.

76. As a result of Defendant Clark's deliberate indifference, Mr. Jennings suffered the injuries and damages set forth above.

77. Defendant Clark is liable for Mr. Jennings's injuries.

78. At all relevant times, Defendant Clark was acting under color of state law and within the scope of her employment as a DOCCS employee.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

1. Compensatory damages for physical, psychological, and emotional injuries, in an amount to be determined at trial;

2. Punitive damages in an amount to be determined at trial;

3. Reasonable costs and attorneys' fees under 42 U.S.C. § 1988:

4. Pre- and post-judgment interest to the fullest extent permitted by law; and

5. Such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs, and disbursements of this action.

Dated: January 8, 2025
New York, New York

KAUFMAN LIEB LEBOWITZ &
FRICK LLP

______________________________
David A. Lebowitz
Kyla P.S. Magun
18 East 48th Street, Suite 802
New York, New York 10017
(212) 660-2332